Mr. Clerk, will you call the next case, please? 3-11-0267, the court of the State of Illinois, Anthony v. Judy Kelly v. Anthony Hawkins, appellant by Mark Fisher. Mr. Fisher? Good afternoon, Your Honors. May it please the Court, Counsel. Representing the defendant in this case, Anthony Hawkins. Mr. Hawkins was convicted in a jury trial of first-degree murder and aggravated unlawful use of weapons. Specifically, the jury found that on September 7, 2008, defendant shot and killed Ronald Robb without lawful justification, and knowing that his conduct was likely to result in Mr. Robb's death. In arriving at this verdict, the jury rejected the defendant's claim of self-defense. Defendant was sentenced to consecutive terms of 45 and two years imprisonment. Two issues are raised on appeal. Both of them challenge evidentiary rulings made by the trial judge. Issue one concerns a ruling by the judge allowing the state to present certain evidence at trial over defense objection. Issue two concerns two rulings by the judge prohibiting the defense from introducing evidence at trial, again, over defense objection. Defendant submits that the evidence as to self-defense was closely balanced. Therefore, the judge's evidentiary rulings, which were an abuse of discretion, denied him a fair trial. And Mr. Hawkins, therefore, asked this court in both issues raised on appeal to remand the cause for a new trial. And I'll apologize up front. Both of the issues involve some unfortunate language, but it's language that was used in the trial court and language which I think is germane to both of these issues. The ruling challenged in issue one allowed the state to present evidence to the jury at trial of a statement that the defendant made while in custody, while in police custody, that was both video and audio taped. The evidence showed here that the defendant was arrested fairly shortly after the shooting occurred, was brought to the police station, was placed in an interrogation room. Now, ultimately, he was interrogated by two police detectives, and that was both video and audio taped. But what was also video and audio taped was about a 20-minute period of time during which the defendant sat alone in the interrogation room before being questioned by the officers. Now, during some of that time, he sat there quietly. But during other portions of that 20-minute period, he made statements, basically talking to himself. And the judge allowed one of those statements to be introduced at trial over defense objection. That statement was, and I quote, Let's just go sit with the fucking niggers and Mexicans and shit and just kill one of them in there too. What the fuck? The state argued and the judge agreed that this statement evidenced the defendant's flippant attitude towards murder and therefore was relevant to his state of mind at the time of the shooting. The defendant submits that the judge was just simply incorrect, that the statement was completely irrelevant to his state of mind at the time of the shooting. Furthermore, it was unduly prejudicial, and thus its admission denied him a fair trial. Now, evidence showed that at the time he was sitting there in the interrogation room, he was likely under the influence of alcohol, because he consumed alcohol for a period of several hours that day prior to the shooting. Again, the arrest took place shortly after the shooting occurred. He also was likely under stress. He had just been arrested for a serious offense, was about to be questioned by two officers. He was also still likely under the influence of a traumatic event, the shooting that had just taken place. In addition, the evidence showed that when he was arrested, he was dragged out of his vehicle by police officers onto the ground. A taser was used against him. In fact, ultimately his interrogation had to be cut short because he was taken to the hospital, apparently suffering from chest pains. Considering all of these factors, it's just a stretch to conclude that these statements were somehow rational or the product of cool and calm reflection, and that they truly indicated his attitude towards murder, his flippant attitude towards murder, or had anything to do with his mental state at the time of the shooting. In fact, the state in its brief characterizes some of these pre-interrogation statements as rantings, and I think that's probably a good term. I don't see how these rantings had anything to do with his mental state at the time of the shooting. Well, assuming that was error in the admission of those statements, why isn't it harmless error? Well, I don't think it's harmless because, number one, again, the defendant would submit to the court that the evidence of self-defense was closely balanced in this case, a serious case of self-defense was presented to the jury that the jury had to decide, and this type of statement obviously portrayed the defendant as a racist, as a bigot, as a rather unlikable and unsympathetic type of character, and especially where his credibility was so important to his defense, the danger is that the jury would simply be put off by the statement and would reject anything that he might have to say. Now, there was no indication in the record that any of the jurors were members of either of these minority groups about which he made derogatory statements, but I think these statements would be anathema to anybody. I don't think it matters the race, the creed, the nationality of the members of the jury. In addition, I'd submit to your honors that although the defendant didn't specifically testify about the statement, it would appear that what he was saying here, he was giving voice to his fears about what he might encounter either in the county jail awaiting trial or possibly in prison if he were convicted, even though he believed that he had acted in self-defense. That's apparently what he was talking about here. It may not have made any sense, but it didn't have anything to do with the shooting, and this guy was not... But he didn't testify to that, explaining the meaning... That's true. So this is speculation. Well, it's speculation, but the judge had to find that it was relevant in order to be admissible. Obviously, relevance is the linchpin of admissibility of any type of evidence, so the judge had to find it was relevant. The defendant submits that it's speculation that this somehow typified his attitude in general towards murder. I think that's just going way out on a limb. Your suggestion about what it might possibly mean would seem to make it relevant to the extent that it sounds like, from what you're saying, that he was talking about defending himself in prison, and that would be consistent with self-defense. Right, and I agree that I think that's probably talking about the possibility, the fear that he might have to defend himself in prison. But to say that that was relevant to what he encountered at the scene of the shooting, I think those are two totally different things. And this guy had no history of violence. He's a professional hitman, so killing somebody isn't something that's going to concern him. He's just flippant about it, give care of less. That's not what this evidence showed, especially because it was so inflammatory. I think here the judge had to be, I can't say 100%, but supremely confident as to its relevance, because if it's less prejudicial, well, in the end, if it's not so relevant, maybe it doesn't make a difference. But here, because it's so inflammatory, I think it's especially important that it be relevant. And the defendant admits it just had no relevance at all. For these reasons, the judge abused her discretion by allowing the statement to come forward. The defendant admits that she also abused her discretion. He was also denied a fair trial by virtue of two additional rulings she made, which inhibited the defendant's ability to fully and completely convey his claim of self-defense to the jury. One of those rulings prohibited the defendant from testifying that when he was arrested, he told the arresting officers, and again, please excuse my French, but that he told the arresting officers that he shot the victim because the victim had pulled a fucking knife. Now, the judge ruled this was an invisible hearsay, and viewed in a vacuum, that ruling might appear to be correct because it was consistent with the remainder of his testimony that he acted in self-defense. And so this would appear to be a prior consistent statement. But the reason the defendant wanted to give this testimony was to counter what he believed was a misstatement by one of the prosecution witnesses. One of the arresting officers testified in the prosecution's case in chief that when the defendant was arrested, the defendant said he shot the victim because the victim was fucking his wife. Now, of course, if the jury credited that testimony, it would be less likely to accept the defense of self-defense. It's diametrically opposed to his claim he shot him because he was threatened with a knife. And so here the defendant was simply attempting to counter, again, what he believed was a misstatement, a very important misstatement, by this prosecution witness. Under the doctrine of curative admissibility, a defendant may be allowed to produce otherwise inadmissible evidence to counter a misstatement or misimpression presented during the state's case in chief. And that was the reason defense sought to admit this testimony. Defendant's admissibility was also admissible to rebut the state's claim of recent fabrication because although the defendant told the officers during interrogation... Was that needed to counter? Wasn't it already there through the testimony of the officer? I don't believe it was. It's true that during cross-examination, defense counsel elicited from the officer his admission that he wore hearing aids and elicited from the officer that the terms, the words wife and knife, of course, are very similar and therefore it would be possible that what the defendant actually had said was referencing the fucking knife as opposed to the wife. But when the defendant testified, the judge allowed the defendant to deny having made the statement the officer claimed he made, did not allow the defendant to testify as the statement he actually made. And so I would submit to your honors that once defense counsel in cross-examination brought up that possibility with the officer that he misheard it, that the jury might have been thinking... Because even the officer said, yeah, it's possible because they're so similar. And so the jury might have been thinking along those lines, but I would have thought, would have think that the jury would then expect the defendant to say what he actually said. But because they were left with the defendant only being allowed to deny what he had said, the danger there is the jury would have thought, well, okay, defense counsel was floating up a balloon as to what he might have possibly said, but then the defendant doesn't back it up and then the air goes right out of the balloon. I think that's the danger here. And so it was important for the defendant to be able to give this testimony. Again, the state argued to the jury that although the defendant told the interrogating officers that he'd acted in self-defense, he'd not made similar statements to people at the scene following the shooting or to his common-law wife and son with whom he had brief contact following the shooting. What's a common-law wife? I'm sorry? Is there such a thing in Illinois? Well, I use it maybe in not such a legal sense. It was a woman he had lived with for... We don't have common-law... Many years, okay, okay. I use that maybe in the vernacular. I think he might have used the term. A woman that he had lived with for several years. They had a son together. They were not married. In any event, the state basically said, oh, he made up self-defense when he was in the interrogation room by making the statement to the officer. The arresting officers, that shows he didn't just make it up in the interrogation room. He made the statement previously. For these reasons, the defendant argues that the judge was wrong to find this statement was inadmissible. It really was admissible for two different legal reasons. Judge also found to be inadmissible hearsay. The defendant hoped to testify that he had a standing offer from the owner of the auto body shop outside which the shooting occurred to sell guns to the owner if ever he needed the money. And this became important because the evidence showed that the defendant was actually at the scene at that auto body shop twice that day. Thank you. He spent several hours there that afternoon. He was drinking with the victim and the victim's girlfriend. Apparently, they both became intoxicated. Engaged in a verbal argument, the owner felt the defendant was getting a little bit out of hand and belligerent, and so he told the defendant to go home. The defendant did go home. Shortly thereafter, he came back. He was armed, had a confrontation with the victim, shot, and killed him. The state argued to the jury in closing that the defendant returned to the shop to exact revenge for having been ordered to leave. Defendant testified he went back for an innocent purpose, to engage in an illegal gun transaction with the owner of the shop. If the jury believed he went back to exact revenge, defendant admits it would be less likely to find there was self-defense. If they believed he had an innocent purpose, it might be more likely to accept his claim that he acted in self-defense. There was testimony at trial that the two men had previously engaged in legal gun transactions. Defendant further testified that that day he had a brief conversation with the owner about selling him additional guns, but the owner denied any conversation that day. And so the problem here, I think, is that if the jury believed the owner, they might be less likely to believe that was the defendant's intent in going back to the shop. But if they heard he had a pre-existing standing offer, they might have believed, yeah, that was what the defendant was really thinking, despite the owner's testimony that they didn't talk about it that day. And therefore, this was being introduced to show a state of mind, not the truth of the matter asserted. In an out-of-court statement where relevant can be introduced to show either the speaker's state of mind or the defendant's state of mind, here it was being introduced to show the defendant's state of mind. And so defendant again argues it was not an admissible hearsay. It should have been allowed, again, because the evidence was close here, and he was here really limited in his ability to fully convey his claim to the jury of self-defense. Defendant submits these rulings, denied him a fair trial. As to all three rulings, whether individually or cumulatively, he maintains he did not receive a fair trial, and therefore respectfully asks Your Honors to remand the cause for a new trial. So you're saying that the state got to show a state of mind with a very prejudicial statement, that the defendant never got the opportunity to show his state of mind with a fairly innocuous statement? I mean, he was able to testify to some degree as to his state of mind, certainly going back to the shop and what happened during the confrontation. Yeah, but in terms of the gun sale. Right, right. Because again, if the jury believed the owner's testimony that although they'd engaged in prior transactions, they didn't talk about it that day, the jury might have been thinking, well, it's not logical, then, that that was really the defendant's thought process in going back. But if they knew he had this preexisting offer, hey, if you ever need the money, come back and I'll buy those guns back from you, that would have shown, yes, that was his thought process, despite the fact that maybe they didn't talk about it that day. And again, his purpose in going back to the shop became very important. And it was discussed, argued heavily by both sides in closing argument. Thank you very much, Mr. Fisher. And Ms. Kelly. May it please the Court, Counsel. To address Counsel's issues in reverse order, the very last issue that he brought up, the people continued to assert, as we did in the brief, that it was not being offered to show the defendant's state of mind, but it was being offered to prove the truth of the matter asserted therein. Because the jury would have to accept the truth of the matter, that Ed had told him he had a standing offer, in order to believe the defendant's testimony that his state of mind was that he came back just to show him some guns. Of course, the people continued to assert that this testimony of the defendant was undermined, not by his inability to get in this remote-in-time hearsay, but by the fact that he, in fact, returned to the scene with only the one loaded weapon in his waistband. There's ample testimony that when he returned to the scene, he did not yet have all of his guns in the truck. He told the police that he returned to the scene with just the one gun in his waistband. And by the way, that's a gun he carries all the time. It coincided with his wife's testimony that the first time he came home, she could tell he was drunk. She heard him go into the bedroom, she heard him open the safe, and then he left. And then he came back, and he was more shaken up, and told her he loved her and told the son to take care of his mother. Went back into the room where the guns were and left again. Additionally, when he was being questioned by the police an hour after the incident, he told them he came back to the scene with just the one gun. And after the shooting, he went home, he got the rest of his guns, loaded them in the truck, and took off. So if the jury disbelieved his testimony that he was coming back out there to show Ed some guns, it was more likely undermined by all of the other testimony in the case, not by the fact that he couldn't get in this one hearsay set of evidence. Additionally, Ed testified that they had had gun transactions in the past. That evidence was before the jury, and he was not harmed by keeping out a specific statement of specific hearsay statement that Ed may have made to him a week or even earlier than that. He was very vague on the time. So the judge was right in keeping out the statement. There was adequate other evidence of his testimony at trial as to why he came back. But that was undermined by his statements to the police that he didn't remember why he came back, and he only had the one gun. And that's probably what undermined his testimony. Similarly, with regard to his claim of recent fabrication with regard to the statement that the officer heard, the officer was quite candid in cross-examination, stating that he had hearing impairments, though he felt he could hear well. But yes, it was quite possible that he misheard, and that the statement that the attorney repeated a number of times about the knife was in fact the statement that was made. The jury heard that statement repeatedly. And again, on direct examination of the defendant, he was asked, did you make the statement that the officer heard and repeated the statement? And the defendant was able to deny that. Well, is that the same as being able to say what he actually said? What he actually said is hearsay. It's a self-serving statement. So does he come within an exception to the hearsay rule? No, he did not. People believe we've adequately explained in the brief why he did not come within an exception to the hearsay rule. He did not argue at the time, as he has on appeal, the two bases he's arguing today. The people who continue to submit it was not, it does not come in as a prior consistent statement to re-plot the term of recent fabrication. The people didn't argue that he had recently fabricated this defense of self-defense, that he just plain fabricated that defense. And within an hour of the shooting, he's already telling the police that. He's, in fact, musing to himself before the police ever come in, you know, the guy pulled a knife. So, however, what the people argued was that he didn't state that to the, we argued that he didn't tell his wife, or he didn't tell any of the people at the scene that heard the gunshot, ran out, and saw him standing there like this, put the gun in his waistband, nonchalantly get back in his truck, that he pulled a knife. But, so he must have thought of it at some point, perhaps when he was fleeing the police for three miles, when they had to chase him down. Perhaps that's when he came up with it. It was not, there was no need, it doesn't come within the prior consistent statement, exception to the hearsay rule. He said it, the passage of time between when he would have said it to the police officer getting into the car, and when he mused it to himself on the video was, you know, probably 20 minutes. So, it was consistent with what he said on the video and his testimony at trial. The fact that he was not allowed to also tell the jury, no, I didn't say what he heard, but this is what I said, was harmless if it were error at all. I still believe it did not come within either of the exceptions that the defendant raises for the first time on appeal, and it certainly did not come within the exception, which is the only one he presented to the trial judge, the doctrine of completeness. So the judge's ruling, keeping the statement out, was not an abuse of discretion. And as the people argued in the brief, even if either of those evidentiary rulings were an abuse of discretion, they were harmless because of the overwhelming evidence otherwise entered with regard to his testimony at trial. To briefly address the first issue, which was the statement he made to himself while musing, that went on for quite some time. There'd be periods of moments when he sat and said nothing, and then periods of moments where he was musing as to what happened. The tenor of his musings were that he had actually done the police a favor, he had taken the drug dealer off the street, and he made a number of racially and ethnically offensive remarks, all of which were kept out, except for this one, because it showed his attitude toward life. What he considered to be a low life was perhaps somebody deserving of less respect than anybody else. Similarly, at trial, he introduced evidence of painting the victim in a bad light, of all of his tattoos and other bad acts that he had been involved in, that the victim had been involved in, and the one statement that the judge kept in that people believed was relevant evidence, relevant of the defendant's attitude toward people that he felt were low lives, a very flippant attitude toward life, and therefore was relevant to the killing and the defensive self-defense raised by the defendants. So the judge, she carefully, well-reasoned, and well-articulated her decisions. The people have in fact put some of her reasoning into the record. The rulings were not an abuse of discretion and should be affirmed. Thank you, Ms. Kelly. Thank you. And Mr. Fisher, any rebuttal? With respect to the ruling involved in the first issue, the state argues and well shows his attitude towards low lives in terms of the statement. Well, in terms of the individuals who he's talking about, of the general groups, he talks about in the statement while sitting in the interrogation room alone, and claiming that the victim was a low life. There was more to it than that. The statement was not just railing against minorities, as bad as that was, but he was also again talking, and I think it's logical to assume, although again he didn't testify about it, but he was talking about his fears of what might happen to him again while in custody, whether in jail or prison. So it's not just, oh, I'm going to kill somebody because I don't like that person, or I don't like that type of person. He's using fears that maybe other members of the populace have. Here, I'm going to go into custody, I'm going to be involved with all these people coming into day-to-day contact with them, and I might be threatened with violence. That's what he's talking about. So again, I don't see where there's any connection between that and his mental state at the time of the shooting, and whether or not he was justified in shooting Mr. Robb. With respect to the second issue, the statement that the testimony defendant wished to make about the statement he actually said to the arresting officers, the state argues that's waived because he didn't argue either rebutting recent fabrication or a doctrine of curative admissibility to the trial judge. That's true. I've addressed it in the reply brief. The interesting thing that I also note in the reply brief is the doctrine of curative admissibility, which the defendant submits made the statement admissible. It seems to be viewed by the courts very similarly to the doctrine of completeness. Now, completeness involves a situation where one side introduces part of a statement or part of a communication, and the other side, to give a more full and complete picture of the communication, is allowed to present the remaining part so the jury sees everything that was said or was communicated. It's a situation where one side kind of opens the door by bringing in some of it so the other side's able to respond. Curative admissibility is also really opening the door, except here the state is opening the door with what the defense believes is a misstatement. So now the defense should be allowed to respond and say what he actually said. So the case law, although there are different doctrines, it's true, the case law talks about some of them almost interchangeably or at least in the same breath because they are closely related. And so the fact that trial defense counsel didn't use the term curative admissibility and instead said completeness, I don't think should preclude this court from deciding the issue on the merits. The issue was certainly argued. The admissibility of that statement was thoroughly argued and the judge made a decision. I think the focus should be on the judge's decision rather than the precise terms used by counsel. With respect to the second part of Issue 1, the pre-existing offer, the state seems to argue, well, it's unlikely that that was really the reason why the defendant returned to the shop. The reason he returned to the shop, what his mental state was at the time of the shooting, whether or not he acted in self-defense, this was a jury question. The jury should have had all of the available evidence before it on which to make that decision. A defendant submits here that as a result of the judge's ruling, the jury was precluded. Not only was the defendant precluded from completely getting his story out to the jury, the jury was unfairly limited in being given all of the evidence on which to make that decision. And for that reason and all of these reasons, again, Mr. Hawkins submits that he simply did not receive a fair trial here and respectfully asks Your Honors to remand the cause for a new trial. Thank you, Mr. Fisher, and thank you both for your argument today. We will take this matter under advisement and get back to you with a written disposition within a short time.